Jannette STEVENSON, etc., et al.,
Appellants,

v.

## PRUDENTIAL INSURANCE COMPANY OF AMERICA et al., Appellees.

Court of Appeals of Kentucky.

May 5, 1961.

Harris & Becht, Louisville, for appellants.

Bullitt, Dawson & Tarrant, Woodward, Hobson & Fulton, James M. Cuneo, McElwain, Dinning, Clarke & Winstead, Louisville, for appellees.

MILLIKEN, Judge.

The trial court granted summary judgment to the appellees, defendants below, and the appellants contend that the summary judgment is based upon erroneous findings of fact by the trial court.

The action was instituted by Jannette Stevenson against Tri-City Oldsmobile Company, General Motors Acceptance Corporation, hereinafter referred to as G.M. A.C., and the Prudential Insurance Company of America for the purpose of collecting the amount she claimed she was due on a credit life insurance policy on the life of her husband, Mack Stevenson, who died in August, 1958, after they had purchased a 1957 Oldsmobile from Tri-City Oldsmobile Company in January of that year. On three previous occasions the Stevensons had bought Oldsmobiles from Tri-City and financed the purchases through G.M.A.C. However, late in 1957 they bought an automobile from another dealer and in financing the transaction credit life insurance on Mr. Stevenson was added to the usual fire and collision coverage required by the finance company. They were displeased with the car they purchased from the other dealer, and traded it in on the 1957 Oldsmobile bought from Tri-City. Mr. Stevenson traveled a good bit and the record indicates that Mrs. Stevenson requested the credit life insurance during the financing arrangements with Tri-City. The credit life insurance would have protected her for the balance of the payments due in case of Mr. Stevenson's death and was procurable at a small added cost. In none of the previous purchases of automobiles from Tri-City was credit life insurance involved.

When the Stevensons received their copy of the conditional sales agreement a few days after it was executed, Mrs. Stevenson noticed that credit life insurance had not been procured. She immediately telephoned the salesman at Tri-City who in turn enlisted the help of Mr. Clark who handled most of Tri-City's insurance. Mr. Clark promptly called G.M.A.C., obtained the necessary information about credit life insurance, and relayed it to Mrs. Stevenson by telephone. He told her it would require too much red tape to change the

present documents, but for her to deal directly with G.M.A.C. where she could get the credit life insurance at small cost. Mrs. Stevenson did not go to the G.M.A.C. office at this time nor call up, but testified that she wrote G.M.A.C. a letter requesting such insurance to cover the transaction. She had no copy of the letter. She received no answer from them, did not contact Tri-City again nor make any further effort to contact G.M.A.C. She said that the monthly payments on the Oldsmobile under the conditional sales agreement amounted to $107.95 and that she and her husband added $2.05 to the monthly payments, making them $110 a month, knowing that the $2.05 additional payment was sufficient to carry the credit life insurance. However, in their purchases of other cars through Tri-City and G.M.A.C., the Stevensons had uniformly increased their required monthly payments to round numbers.

We thus have a situation where a written contract of sale of an automobile executed and accepted by the purchaser operated as a merger of prior negotiations. We next have an attempt by the purchaser to procure credit life insurance and an assumption by her, even though she heard nothing from G.M.A.C. or the Prudential Insurance Company, that her request for such insurance coverage had been accepted. G.M.A.C. denied ever receiving any such letter from Mrs. Stevenson, and Mrs. Stevenson admitted she had not talked to any representative of G.M.A.C. before Mr. Stevenson's death, and had not contacted a representative of Prudential at any time. She knew that she had to receive a small square document showing such coverage because the absence of it when the conditional sales contract was returned to her was what called her attention to the fact that she did not have the credit life insurance coverage she wanted. Not until Mr. Stevenson's death did she again talk to Tri-City or G.M.A.C. about credit life insurance.

We think it obvious from this summary that Tri-City was not an agent of G.M.A.

C. or Prudential for the purpose of selling credit life insurance, and that Tri-City merely volunteered to get information from G.M.A.C. for Mrs. Stevenson. Certainly, her offer to buy such insurance, even if communicated to G.M.A.C., did not blossom into a contract when there is no evidence whatsoever of G.M.A.C. accepting the offer. Inexperience in business matters may be the basis for Mrs. Stevenson's assumption that the payment of the extra $2.05 a month, together with her letter to G.M.A.C., bound G.M.A.C., but such inexperience did not cast a shadow of liability ipso facto over G.M.A.C. even if it had received the letter. It was incumbent on Mrs. Stevenson in the months that followed to contact G.M.A.C. about the insurance when she heard nothing from it.

In the light of the pleadings and the evidence taken in support thereof, we find no legally operative fact in dispute except whether G.M.A.C. received her letter, and even if it had received it, no contract for insurance could be effected until G.M.A.C. procured the insurance.

The judgment is affirmed.